IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>v.<br><br>HUMBERTO RAMOS-SOSA,<br><br>   Defendant. | No. 21 CR 497-2<br><br>Judge John F. Kness |

**MEMORANDUM OPINION & ORDER**

Before the Court is Defendant Humberto Ramos-Sosa's motion (Dkt. 92) to revoke the order of pretrial detention (Dkt. 54) entered by Magistrate Judge Gabriel A. Fuentes. Based on the government's presentation of specific and credible evidence that Defendant communicated a threatening message to one of his co-defendants, Magistrate Judge Fuentes ordered that Defendant Ramos-Sosa be detained pending trial. Upon *de novo* review of the record, the Court agrees with Judge Fuentes's ruling. Accordingly, Defendant's motion to revoke the detention order is denied.

**I.   BACKGROUND**

Before the Court is Defendant Humberto Ramos-Sosa's motion (Dkt. 92) under 18 U.S.C. § 3145 to revoke the order of detention entered by Magistrate Judge Fuentes. Defendant contends that Judge Fuentes erred in finding that Defendant presents a danger to the community based primarily on an alleged jailhouse threat made by Defendant—and reported by two jail employees, Officer Denoyer and Officer Shoop—to a co-defendant identified by the United States as "Co-Defendant A." Defendant asks that this Court release him on conditions pending trial.

In an indictment returned on August 10, 2021, Defendant was charged with various drug-trafficking offenses. (Dkt. 1.) On the government's motion to detain Defendant, Magistrate Judge Fuentes conducted a detention hearing at which both sides proffered evidence. (*See* Dkt. 54.) At the conclusion of the hearing, Magistrate Judge Fuentes granted the government's motion and found that the United States had shown, by clear and convincing evidence, that no set of release conditions would reasonably assure the safety of the community or any other person. (*Id.*); *see* 18 U.S.C. § 3142(e). That oral ruling was memorialized in a written order. (Dkt. 55.) Magistrate Judge Fuentes did not make any finding as to the risk of nonappearance. *Id.*; *see* 18 U.S.C. § 3142(e).

## II.    DISCUSSION

Essential to the judgment that Defendant now challenges was Magistrate Judge Fuentes's finding that Defendant "threatened the lives of a co-defendant's family." (Dkt. 55 at 3.) As Magistrate Judge Fuentes explained, when Defendant and a codefendant were housed together in pretrial detention at the Livingston County Jail, Defendant threatened to have "the cartel . . . kill" the codefendant's family if the codefendant spoke with the government about the charged offenses. *Id*. Although Defendant argued that the information proffered by the government was unreliable— because it came in part through a secondhand translation by a prisoner and was not sufficiently developed through proper investigation—and that Defendant may merely have been attempting to warn the codefendant of harm that *others* might threaten, Magistrate Judge Fuentes rejected Defendant's arguments. According to Magistrate Judge Fuentes, the suggestion that the perceived threat was a friendly warning was

2

unpersuasive, and the circumstances of the threat instead suggested that Defendant did indeed threaten to visit harm on the codefendant's family. *Id.*

Defendant's current motion to revoke the detention order challenges Magistrate Judge Fuentes's findings and contends, in a position agreed to by the United States, that review at this stage under Section 3145(b) is *de novo*. (Dkt. 92, at 2; Dkt. 95, at 4.) Because the parties agree on the standard of review, the Court accepts for purposes of this ruling that a *de novo* standard applies. *Cf. United States v. Torres*, 929 F.2d 291, 292 (7th Cir. 1991) (although § 3145 "speaks of 'review' by the district judge, the court may start from scratch"). At a hearing held on 12/15/2021 (Dkt. 109), the Court afforded both sides the opportunity to present additional evidence. Both the United States and Defendant declined at that time to offer testimony or other additional evidence.

In a later filing, however, the United States submitted an affidavit from Ian Shoop, a correctional officer at Livingston County Jail (the "Shoop Declaration"). (Dkt. 112 (filed under seal).) Officer Shoop describes an incident at the jail involving Co-Defendant A, who was experiencing an "anxiety attack." (*Id.* ¶ 10.) When jail officials questioned him about the circumstances giving rise to the anxiety attack, Co-Defendant A reported (through another inmate, who translated for Co-Defendant A) that "Sosa" "threatened [his] family." (*Id.* ¶ 13.) From his conversation with Co-Defendant A, Officer Shoop "understood that inmate Ramos-Sosa threatened inmate [Co-Defendant A] that inmate [Co-Defendant A's] family would be killed if inmate [Co-Defendant A] spoke with law enforcement." (*Id.* ¶ 18.) Based on that understanding, Officer Shoop moved Co-Defendant A to a separate jail pod from

3

Defendant Ramos-Sosa with "additional officer surveillance as further protection for inmate [Co-Defendant A]." (*Id.* ¶ 19.)

As before Magistrate Judge Fuentes, Defendant's principal objection to the legality of his pretrial detention rests on a challenge to the reliability of the evidence proffered earlier by the United States. According to Defendant, the evidence pertaining to the purported threat directed toward Co-Defendant A's family is shaky; Defendant contends that this Court should hold an evidentiary hearing to entertain live witness testimony about the threat. Without stronger evidence, Defendant argues, there is no basis for keeping him in custody before trial.

In a recent decision, Magistrate Judge Sunil Harjani of the Northern District of Illinois explored in detail the legal framework for resolving detention-related matters where the parties dispute important facts. According to Judge Harjani, although the Seventh Circuit has "not laid down any principles as to when a district or magistrate judge should request a live witness, versus a proffer of witness testimony," courts should consider a variety of factors in evaluating the appropriateness of proceeding by way of proffer, including the burden of producing a live witness, the impact of pretrial detention, and the administrative benefit (in terms of expediency) of proceeding by proffer. *United States v. Russell*, No. 19 CR 641, 2021 WL 5447037, at *4-*7 (N.D. Ill. Nov. 22, 2021) (citing *United States v. Torres*, 929 F.2d 291, 292 (7th Cir. 1991)).

*Russell* accurately identifies the importance of ensuring that a reliable evidentiary foundation supports the weighty determination of whether to detain a criminal defendant before trial. Especially where factual matters are contested, as

4

they are here, judges must ensure that something more than supposition backs up the arguments why certain facts either support or undercut detention. That assurance can, depending on circumstances, come from a variety of evidentiary forms: live testimony, affidavits, or, where uncontested, by proffer. *Russell*, 2021 WL 5447037, at \*4. But where facts are disputed, the *sine qua non* is sworn *evidence*—a category of information that transcends mere "conclusory and speculative allegations." *See, e.g.*, *Kafo v. United States*, 467 F.3d 1063, 1068 (7th Cir. 2006).

It is not clearly established, however, that live testimony is always required when a defendant challenges factual allegations presented by the government in support of detention. *See, e.g.*, *Russell*, 2021 WL 5447037, at \*4-\*5. To be sure, in *United States v. Torres*, where the district court denied a defendant's request to elicit testimony from family members at a detention hearing, the Seventh Circuit noted that "[o]ffers of proof are but a shadow of testimony." 929 F.2d 291, 292 (7th Cir. 1991). But the Seventh Circuit has also explained that sworn statements are more reliable than attorney proffers—they are, in fact, actual evidence. *See Kafo*, 467 F.3d at 1068 (explaining, in context of motion under 28 U.S.C. § 2255, that sworn allegations, including affidavits, "*become* evidence and permit the district court to evaluate properly the movant's allegations and to determine whether a sufficient threshold showing has been made to warrant further proceedings"). These decisions suggest a top-down hierarchy of value: live testimony, followed by other forms of sworn evidence (such as affidavits), and finally proffers. In the absence of a clearer rule, the most the Court can say is that whether to require live testimony for a detention hearing will depend on the specific context of each case.

5

Applying this legal framework to Defendant's challenge to the order of detention, the Court must determine both whether an evidentiary hearing is necessary and, if not, whether the evidence as it stands now is sufficient to sustain the order of detention. Defendant raises several arguments as to why live testimony is needed and why, in the absence of a hearing, detention is unjustified. None of these arguments, however, is persuasive.

Defendant first contends that the evidence presented by the government fails to show who made the threat against Co-Defendant A. According to Defendant, the Shoop Declaration refers merely to "they" as the perpetrator of the threat; it thus fails to establish that Defendant "made any specific threat to" Co-Defendant A. (Dkt. 113, at 3-4.) But that argument ignores the portion of the Shoop Declaration in which Officer Shoop clarifies that Co-Defendant A stated it was Defendant who made the threat. (Dkt. 112 at 5, ¶ 17 (filed under seal).)

Defendant also challenges the inferences the government seeks to draw from the alleged threat. Defendant contends that Co-Defendant A never described the threat made against him. (Dkt. 113, at 3.) Defendant also says that the government "muddied the waters" by walking away from Officer Denoyer's earlier statement that Co-Defendant A "was just stressed about not being able to contact his family." (*Id*.) But the available evidence, and the inferences reasonably to be drawn from it, do not support Defendant's attempt to paint Defendant's alleged comments as milquetoast.

According to the Shoop Declaration, Co-Defendant A admitted that he was involved with "a cartel connected to the Sinaloa cartel." (*Id*. at 5, ¶ 16.) This prosecution concerns alleged controlled substance offenses; it is thus reasonable to

6

infer that Co-Defendant A mentioned cartel involvement in connection with his and his co-defendants' alleged drug trafficking. It is also reasonable to infer, in view of the understood methods of organized drug traffickers, that cartel members might seek to dissuade Co-Defendant A from cooperating with the prosecution—might cause Defendant to threaten harm to Co-Defendant A's family to keep Co-Defendant A in line.

Co-Defendant A's panic attack, which was accompanied by acute physical distress, is consistent with this understanding and reflects Co-Defendant A's genuine fear for his family's well-being. This evidence independently suggests that Co-Defendant A—who, after all, was familiar with Defendant owing to their alleged joint criminal activities—viewed the threat as credible. Co-Defendant A's reaction supports a finding that Defendant's comments reflected a serious threat to the well-being of Co-Defendant A's family.[1]

In the light of this evidence, and even on a *de novo* review with due regard given to the well-presented argument by Defendant's counsel, the Court holds that Magistrate Judge Fuentes did not err in ordering Defendant to be detained pending trial. On the most natural reading, the record reflects, by clear and convincing evidence, that Defendant threatened the safety of Co-Defendant A's family. That fact is sufficient to warrant pretrial detention to ensure "the safety of any other person

---

[1] Officer Denoyer's reported comment that Co-Defendant A was merely "stressed" about not being able to reach his family is not inconsistent with the Court's finding. That comment, which was provided second-hand, confirms that Co-Defendant A *was* worried about his family. And Defendant's interpretation of the statement does not account for, among other things, the physical manifestations of Co-Defendant A's panic. In the Court's view, it is unlikely that Co-Defendant A would have had such an extreme reaction merely to being unable immediately to contact his family.

and the community." 18 U.S.C. § 3142(e)(1); *see also* 18 U.S.C. § 3142(e)(3)(A) ("Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the . . . safety of the community if the judicial officer finds that there is probable cause to believe that the person committed . . . an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act. . . .").

Several factors corroborate Magistrate Judge Fuentes's finding. There is no readily apparent bias that would motivate two Livingston County Jail officials and a cellmate to concoct or embellish a story about a threat by Defendant, particularly where the threat was followed by physical manifestations of panic by Co-Defendant A. And, as explained above, it is plausible to infer that an alleged leader of a drug trafficking organization would seek to ensure that confederates do not cooperate with the prosecution—or that he would be able effectively to convey threats to achieve that goal.

It is not necessary for the Court to hold an evidentiary hearing to support these findings. Defendant suggests (Dkt. 113 at 4) that Co-Defendant A should be called to testify, but the clear and convincing evidence standard imposes no such specific requirement. Where, as here, the detailed allegations presented by the government are presented through a sworn affidavit, the Court sees no need for live testimony. This is especially so where Defendant has presented no evidence to refute that presented by the government. *See* 18 U.S.C. § 3142(e)(3)(A).

8

## III. CONCLUSION

The government has presented specific and persuasive evidence that Defendant communicated a threatening message to Co-Defendant A. Despite being offered the opportunity, Defendant has offered no contradictory evidence. Accordingly, the Court holds that Magistrate Judge Fuentes committed no error in ordering Defendant detained pending trial. Defendant must remain detained pending the resolution of this case.

SO ORDERED in No. 21-cr-00497.

Date: February 23, 2022

                                                    JOHN F. KNESS
                                                    United States District Judge